FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

DEC -9 2009

JAMES N. HATTEN, Clerk
By:
Deputy Clerk

## THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DONNA HOOD,

    Plaintiff,

    vs.

HARTFORD LIFE AND
ACCIDENT INSURANCE
COMPANY; and

LONG TERM DISABILITY PLAN
FOR CHILDREN'S HEALTHCARE
OF ATLANTA *a/k/a* Group
Supplemental Dependent Life,
Supplemental Term Life Plan for
Employees of the Policyholder, THE
TRUSTEES OF THE CHILD
HEALTHCARE BENEFITS
ALLIANCE TRUST; Participating
Employer, CHILDREN'S
HEALTHCARE OF ATLANTA.

    Defendants.

CIVIL ACTION NO.:



1:09-CV-3455

ORIGINAL

## COMPLAINT

COMES NOW Plaintiff DONNA HOOD, through her attorney, Pamela I. Atkins, filing this Complaint against Defendants alleging ERISA causes of action for wrongful termination of long term disability ("LTD") benefits pursuant to 29

Pamela I. Atkins, Esq., Atkins & Associates , LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA  30338
Phone: (770) 399-9999; Fax: (770) 399-9939

1

U.S.C. § 1132(a) of the Employment Retirement Income Security Act of 1974, as amended ("ERISA") § 502(a) and causes of action for attorneys fees, expenses and the costs of litigation under 29 U.S.C. § 1132(g)(1) and alleging in support of her complaint as follows:

## A.    JURISDICTION

1. Plaintiff's claims relate to an employee welfare benefit plan as defined by the Employee Retirement Income Security Act of 1974, as amended (hereinafter "ERISA"), 29 U.S.C. δ 1001, *et seq* and the LTD Plan constitutes a plan under ERISA.  This Court's jurisdiction is invoked pursuant to 28 U.S.C. δ 1331 and 29 U.S.C. δ 1132(e).

2. Venue is proper within the Northern District of Georgia pursuant to 29 U.S.C. δ 1132(e)(2) because such action may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found.

3. Plaintiff exhausted all pre-litigation remedies required under the LTD Plan and ERISA.

## B.    PARTIES, ENTITIES AND RELATIONSHIPS

4. Plaintiff Donna Hood (hereinafter "Plaintiff" or "Ms. Hood") is and was, at all relevant times, a citizen of the United States and a resident of the State of Georgia.

5. At relevant times, Ms. Hood was an employee of Children's Healthcare of Atlanta (hereinafter "Children's" or "CHOA"), and as an employee of Children's, Ms. Hood was a participant and beneficiary in various employee

Pamela I. Atkins, Esq., Atkins & Associates , LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA  30338
Phone: (770) 399-9999; Fax: (770) 399-9939

2

benefits offered by Children's including a welfare benefit plan providing group long term disability (hereinafter "LTD") benefits.

6. Children's or CHOA is an owner of Child Health Corporation of America (hereinafter "CHCA").

7. CHCA is an owner-led organization comprised of a group of children's hospitals across the nation providing business support services to member hospitals.    CHCA serves as a group purchasing coalition in the area of employee benefits and negotiates contracts that member hospitals may choose to join; thereby providing a means to economically purchase benefits for their employees.

8. As an owner of CHCA, Children's is eligible to participate in the aggregation of various insurance programs brokered by CHCA including a welfare benefit plan providing group long term disability benefits.

9. The long term disability plan that Children's provides to its employees is purchased from The Hartford Life and Accident Insurance Company via a trust agreement brokered through CHCA.

10. Hartford Life And Accident Insurance Company (hereinafter "Hartford") issued a group insurance policy (hereinafter "Policy") to provide benefits for the LTD Plan, effective January 1, 2002, and the Policy is incorporated into and forms a part of the LTD Plan.  A true and correct copy of the LTD Policy is attached as Exhibit 1.

11. Upon information and belief as stated in the LTD Plan Booklet (hereinafter "Booklet") or Summary Plan Description (hereinafter "SPD"), the policyholder of the LTD Plan is The Trustees of the Healthcare Benefits Alliance Trust.  A

Pamela I. Atkins, Esq., Atkins & Associates , LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA  30338
Phone: (770) 399-9999; Fax: (770) 399-9939

3

true and correct copy of the SPD for the LTD Policy is attached as Exhibit 2.

12. Upon information and belief and as stated in the Booklet or SPD, The Trustees of the Healthcare Benefits Alliance Trust is the plan sponsor and plan administrator for the LTD Plan, or in the alternative, upon conflicting information provided to Plaintiff's counsel by CHCA in a letter dated August 5, 2009, Children's (or CHOA) is the plan sponsor and plan administrator for the LTD Plan.

13. Children's is an LTD Plan participating employer effective January 1, 2002.

14. Children's pays the premium to Hartford for the insurance Policy, but may allocate part of the cost to the employee.

15. Upon information and belief, 100% of the premium was paid by Children's and no part was allocated to the employee for LTD disability coverage.

16..The official LTD Plan name is "Group Supplemental Dependent Life, Supplemental Term Life Plan for Employees of the Policyholder, THE TRUSTEES OF THE CHILD HEALTHCARE BENEFITS ALLIANCE TRUST; Participating Employer, CHILDREN'S HEALTHCARE OF ATLANTA" (hereinafter "LTD Plan"), and this name is stated on the ERISA disclosures in the Plan Booklet or SPD.

17. Hartford acted as the insurer, claims administrator, and designated fiduciary for benefits provided under the Policy insuring the LTD Plan, and Hartford made all of the claims and benefit decisions regarding the Policy.

18. The LTD Plan grants Hartford the full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy.

Pamela I. Atkins, Esq., Atkins & Associates , LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA  30338
Phone: (770) 399-9999; Fax: (770) 399-9939

4

19. Harford has a conflict of interest as the payor of benefits and as the claims fiduciary.

20. Hartford's conflict of interest, bias and procedural processes affect its decision making and its role as a fiduciary.

21. Hartford is a foreign corporation, organized and existing under the laws of the state of Connecticut, transacting business in the state of Georgia, and the company may be served with process by and through its registered agent Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Georgia  30092, or in the case of service of legal process in connection with the Policy insuring the LTD Plan, Hartford may be served with process by and through: Hartford Life and Accident Insurance Company, 200 Hopmeadow Street, Simsbury, CT  06089 as designated in the Booklet or SPD.

22. The LTD Plan may be served with process upon its agent: Wilmington Trust Company, Attn: David Young, Rodney Square North, 1100 North Market Street, Wilmington, DE  19890-0455 or upon the plan administrator: The Trustees of the Healthcare Benefits Alliance Trust, Wilmington Trust Company, Attn: David Young, Rodney Square North, 1100 North Market Street, Wilmington, DE  19890-0455.

## C.   ADDITIONAL FACTS COMMON TO ALL COUNTS

23. Ms. Hood is a disabled individual who at the time of the onset of her disability was a regular, full time employee of Children's Healthcare of Atlanta (hereinafter "CHOA" or "Children's") performing her occupation as a Registered Nurse and earning a salary of $59,735.52 per year ($4,977.96 per month) plus other employee benefits.

Pamela I. Atkins, Esq., Atkins & Associates , LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA  30338
Phone: (770) 399-9999; Fax: (770) 399-9939

5

24. For over 23 years, Ms. Hood worked as a nurse with Children's until she became unable to work on or about October 19, 2005.

25. The number of hours in Ms. Hood's regularly scheduled work week exceeded 30 hours per week.

26. Ms. Hood regularly worked a 36 to 40 hour work week and would often work three days a week for 12 hour shifts.

27. Despite over 23 years of service, Children's was unable to accommodate Ms. Hood's restrictions and limitations, and Ms. Hood could not return to any other occupation at Children's.

28. Hartford's claim file documents Ms. Hood's distress at being unable to return to her occupation as a Children's Hospital Nurse.

29. During her 23+year career with Children's Ms. Hood worked with sick children in liver and kidney transplants, neurology, urgent care, primary care, and post surgical care.

30. Children's Employee Promise encompassed providing employee benefits as recited in the 2006 benefits booklet as follows:

Pamela I. Atkins, Esq., Atkins & Associates , LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA  30338
Phone: (770) 399-9999; Fax: (770) 399-9939

6

# The Children's Employee Promise

**At Children's Healthcare of Atlanta, it is our enduring mission to enhance the lives of children.** We support this mission by providing for the needs of our employees, offering them resources and a work environment that improves the quality of their professional and personal lives. We believe this is an obligation of our organization. We further believe that thoroughly providing for these employee needs is the best way to ensure that every child our employees touch through care, advocacy and education is given the best chance for a healthy life.

**To demonstrate our commitment to these beliefs, Children's Healthcare of Atlanta** will recognize employees for their contributions and provide employee benefits that make working at Children's a pleasure. We will embrace learning – in both knowledge and skills – to help employees reach their fullest potential. We will foster leadership at all levels, celebrating the unique skills and potential of each individual. As we emulate the children we care for, joy through relationships and teamwork will create a positive environment for everyone. We should laugh together. Sometimes, we may cry together. And we believe that because we view employees equally as persons and professionals, Children's will realize our desire of being the best choice for employment an employee could make.

**We believe this Promise is made more valuable when employees make a similar commitment.** Therefore, we encourage employees to believe that a child's well-being and future define a higher purpose for our work. We need employees to diligently pursue excellence in every activity, and seek and accept accountability. We ask employees to be mindful that children and their families put extraordinary trust in us, and that we cannot let them down. And we trust that employees pursue more than a job, more than a career, but a passion about providing the healthiest childhood possible for children.

**Children need us...**
and through our commitment to each other, we will make this Promise real.

---

Pamela I. Atkins, Esq., Atkins & Associates , LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA  30338
Phone: (770) 399-9999; Fax: (770) 399-9939

31. A true and correct copy of Children's 2006 Total Rewards Book which details eligibility and described the employee benefits in effect and offered to employees during 2006, the year Ms. Hood terminated is attached as Exhibit 3.

32. Since the onset of her disability, Ms. Hood has remained disabled under the terms of the LTD Plan and Policy.

33. Ms. Hood is diagnosed with 1) Post-Laminectomy syndrome and Lumbar Radiculitis (*status post Lumbar Spinal Fusion Surgery on October 19, 2005*); 2) Status post spinal cord stimulator implantation for pain without significant benefit; 3) pain related depression, and 4) Coronary Atherosclerotic Heart Disease, status post angioplasty and stent placement; with congestive heart failure.

34. At the time of its final decision to uphold the termination of Ms. Hood's LTD benefits, Hartford knew and was aware of Ms. Hood's post-laminectomy syndrome, lumbar radiculitis, 10/19/2005 lumbar spinal fusion surgery, 10/28/05 spinal fluid leak repair surgery, chronic severe back and leg pain, prescription use of narcotic medications for pain, 7/1/08 spinal cord stimulator implantation for pain without significant benefit, antalgic gait, pain related depression, and coronary atherosclerotic heart disease, five angioplasties and stent placement surgeries since March 2007, and congestive heart failure.

35. Ms. Hood has been under the continuous care of medical doctors at all times since the filing of her claim for LTD benefits.

36. Despite being under the continuous care of medical doctors, Ms. Hood has been unable to return to her occupation or any other occupation.

Pamela I. Atkins, Esq., Atkins & Associates , LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA 30338
Phone: (770) 399-9999; Fax: (770) 399-9939

8

37. Ms. Hood filed her claim for LTD benefits on January 10, 2006, for disability commencing October 19, 2005.

38. Hartford received and initially approved Ms. Hood's claim for disability benefits under the LTD Plan with disability commencing October 19, 2005.

39. Ms. Hood was disabled for 12 consecutive months including the elimination period as of October 19, 2006.

40. Hartford commenced the payment of benefits beginning March 19, 2006, after a 90 day elimination period and upon the expiration of short term disability benefits which were paid from January 17, 2006 to March 18, 2006, and salary continuation.

41. The gross LTD benefit paid to Ms. Hood was $2,986.78 per month from March 19, 2006 through March 19, 2008.

42. The Policy defines "disability" as follows:

**Disability** or **Disabled** as defined in the LTD plan means that during the Elimination Period; and for the next 24 months you are prevented by:

1. Accidental bodily injury;
2. Sickness;
3. Mental Illness;
4. Substance Abuse; or
5. Pregnancy,

from performing the Essential Duties of Your Occupation, and as a result, your Current Monthly Earnings are no more than 80% of your Indexed Pre-disability Earnings.

After that, you must be prevented from performing one or more of the Essential Duties of Any Occupation.

Pamela I. Atkins, Esq., Atkins & Associates , LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA  30338
Phone: (770) 399-9999; Fax: (770) 399-9939

9

43. The Policy defines "Essential Duty" as follows:

**Essential Duty** means a duty that:

1. is substantial, not incidental;
2. is fundamental or inherent to the occupation; and
3. can not be reasonably omitted or changed.

To be at work for the number of hours in your regularly scheduled work week is also an Essential Duty.

44. The Policy defines "Any Occupation" as follows:

**Any Occupation** means an occupation for which you are qualified by education, training or experience, and that has an earnings potential greater than an amount equal to the lesser of the product of your Indexed Pre-disability Earnings and the Benefit Percentage and the Maximum Monthly Benefit shown in the Schedule of Insurance.

45. The Policy defines "Index Pre-disability Earnings as follows:

**Indexed Pre-disability Earnings** when used in this policy means your Pre-disability Earnings adjusted annually by adding the lesser of:

1. 10%; or
2. the percentage change in the Consumer Price Index (CPI-W).

The adjustment is made January 1st each year after you have been Disabled for 12 consecutive months, and if you are receiving benefits at the time the adjustment is made.

The term Consumer Price Index (CPI-W) means the index for Urban Wage Earners and Clerical Workers published by the United States Department of Labor. It measures on a periodic (usually monthly) basis the change in the cost of typical urban wage earners' and clerical

Pamela I. Atkins, Esq., Atkins & Associates , LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA 30338
Phone: (770) 399-9999; Fax: (770) 399-9939

10

workers' purchase of certain goods and services. If the index is discontinued or changed, we may use another nationally published index that is comparable to the CPI-W.

For the purposes of this benefit, the percentage change in the CPI-W means the difference between the current year's CPI-W as of July 31st, and the prior year's CPI-W as ofJuly 31st, divided by the prior year's CPI-W.

46. Ms. Hood's pre-disability earnings are $4977.96 per month as of October 19, 2005.

47. Ms. Hood's indexed pre-disability earnings adjust to $5,187.03 per month in January 2007.

48. Ms. Hood's indexed pre-disability earnings adjust to $5,306.34 per month in January 2008.

49. The benefit percentage is 60% as shown on the Schedule of Insurance.

50. According to the terms of the Policy, any occupation identified for Ms. Hood had to generate an earnings potential greater than $3183.80 per month in income [60% of $5306.34] to support the termination of benefits as of March 2008.

51. The maximum duration under the LTD Policy is through age 65.

52. Ms. Hood will turn 65 in August 2015.

53. Treating physician Charles A. MacNeill, M.D., Director, Physicians Pain & Rehabilitation Specialists of Georgia and President, Greater Atlanta Pain Society, completed an Attending Physician Statement (hereinafter "APS") dated September 18, 2007, documenting PERMANENT restrictions and limitations for Ms. Hood due to her lumbar impairment and clarifying that

Pamela I. Atkins, Esq., Atkins & Associates , LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA  30338
Phone: (770) 399-9999; Fax: (770) 399-9939

11

Ms. Hood is limited to no more than part-time, sedentary work including more specific limitations as follows: sit 1-2 hours at a time (4 hours total a day); stand 0-1 hours at a time (1-2 hour per day); walk 0-1 hours at a time (0-1 hours per day); occasionally (0 to one-third of the day) lift up to 10 pounds; never lift or carry more than 10 pounds; never kneel or stoop; and occasionally (0 to one-third of the day) bend at the waist, drive, reach above shoulder level, and reach below the waist level.

54. Hartford did not dispute the restrictions and limitations provided by Dr. MacNeill on the 9/18/07 APS.

55. Hartford paid benefits to Ms. Hood for 24 months under the Policy from March 19, 2006 to March 19, 2008 because she was prevented by sickness from performing the essential duties of her occupation as a Registered Nurse.

56. On or about March 10, 2008, Hartford wrongfully terminated the payment of LTD benefits to Ms. Hood based on its determination that Ms. Hood was not disabled from performing the Essential Duties of Any Occupation as defined in the policy.

57. Hartford accepted the restrictions and limitations confirmed by Dr. MacNeill in the 9/18/07 APS, but determined that Ms. Hood could perform the occupations of office nurse and occupational nurse even with the stated restrictions and limitations.

58. On April 14, 2008, Ms. Hood timely appealed the termination of her LTD benefits.

59. On appeal, Hartford conceded that it was incorrect to have determined that Ms. Hood could perform the occupation of occupational nurse because the

Pamela I. Atkins, Esq., Atkins & Associates , LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA  30338
Phone: (770) 399-9999; Fax: (770) 399-9939

12

occupational requirements exceed Ms. Hood's maximum exertion capacity; however, Hartford continued to assert that its determination that Ms. Hood could perform the occupation of office nurse 30 hours per week obtaining a monthly income in excess of $3183.80 was correct.

### Hartford's Flawed Employability Analysis Review

60. The appeal letter of April 14, 2008 by Ms. Hood responds to Hartford's assertion that Ms. Hood could perform the occupation of office nurse as follows:

> Office Nurse: I have been an office nurse and I can tell you that it is definitely not a sedentary job  Besides constantly running from the waiting room to the exam room with patients, the nurse is preparing medications, drawing blood, obtaining other labs, and holding and fighting with children during procedures.  In the adult office, there are elderly and injured patients who must be assisted in dressing and getting in and out of wheelchairs, etc.

61. Despite, Ms. Hood's experience with the job of office nurse and her assertion that the occupation was not sedentary, Hartford failed to properly investigate the light duties of the occupation of office nurse including the essential ability for standing the majority of the time and lifting at the light level of exertion.

62. Standing the majority of a 30 hour work week and lifting 20 pounds of force occasionally (up to 1/3 of the time) and/or up to 10 pounds of force frequently (from 1/3 to 2/3 of the time) and/or a negligible amount of force constantly (2/3 or more of the time) to move objects exceeds the restrictions and limitations place on Ms. Hood by Dr. MacNeill.

63. In its appeal uphold letter of May 13, 2008, Hartford informed Ms. Hood that

Pamela I. Atkins, Esq., Atkins & Associates , LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA  30338
Phone: (770) 399-9999; Fax: (770) 399-9939

13

it conducted a labor market survey in which various employers were contacted regarding the requirements of office nurse and that the results of the survey supported Hartford's conclusion that the occupation of office nurse would not require duties in excess of Ms. Hood's limitations.

64. In fact, the only survey conducted in support of the appeal uphold of May 13, 2008 was focused exclusively on the lifting requirements in the occupation of office nurse and only three (3) medical offices in Minnesota responded to the inquiry and in response all three confirmed that the lifting was at the "light" level of exertion.

65. Hartford's final denial on appeal relies on three phone calls made to undocumented representatives of three medical employers, outside the state of Georgia, in Minnesota, by an agent of the Hartford performing an EAR.

66. Hartford's employee performing the EAR, did not document the names, positions or qualification of the individuals contacted by phone and recorded essentially only that each indicated their position of office nurse was light and would not require heavy lifting or transferring patients.

67. In reliance on these three phone calls, the Hartford employee performing the EAR opined that the occupation of office nurse met the lifting restrictions placed on Ms. Hood, and Hartford upheld the termination of LTD benefits.

68. The employee performing the EAR was never asked to determine if the occupation met the standing, walking and sitting restrictions placed on Ms. Hood.

69. Hartford documented Dictionary of Occupational Titles ["DOT"] # 075.374-014 [hereinafter "DOT"] for the occupation it contends Ms. Hood can perform

Pamela I. Atkins, Esq., Atkins & Associates , LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA  30338
Phone: (770) 399-9999; Fax: (770) 399-9939

14

for 30 hours per week supporting its termination of Ms. Hood's benefits.

70. The DOT classification of the occupation of office nurse is classified at the "Light" level of exertion, not sedentary.

71. As documented in Hartford's claim file, the occupation of office nurse was described by the three medical employers contacted by Hartford as "light" not sedentary work.

72. The United States Department of Labor defines light work as follows:

Light Work - Exerting up to 20 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or up to 10 pounds of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

73. The United States Department of Labor defines sedentary work as follows:

Sedentary Work - Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

Pamela I. Atkins, Esq., Atkins & Associates, LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA 30338
Phone: (770) 399-9999; Fax: (770) 399-9939

15

74. The occupation of office nurse as normally performed in the national and regional economy requires physical demands in excess of those for Sedentary Work.

75. The occupation of office nurse as described in the DOT requires physical demands in excess of those for Sedentary Work.

76. The occupation of office nurse as normally performed in the national and regional economy and as described in the DOT requires physical demands of standing and walking to a significant degree.

77. The occupation of office nurse as normally performed in the national and regional economy and as described in the DOT requires physical demands of exerting up to 20 pounds of force occasionally (up to 1/3 of the time) and/or up to 10 pounds of force frequently (from 1/3 to 2/3 of the time) and/or a negligible amount of force constantly (2/3 or more of the time) to move objects.

78. The restrictions and limitations set forth by Dr. MacNeill do not permit Ms. Hood to perform the occupation of office nurse DOT # 075.374-014 as described by the Department of Labor and as set forth in the DOT.

79. The restrictions and limitations set forth by Dr. MacNeill do not permit Ms. Hood to perform the lifting required for the light occupation of office nurse DOT # 075.374-014 as described by the Department of Labor and as set forth in the DOT.

80. The restrictions and limitations set forth by Dr. MacNeill do not permit Ms. Hood to perform the standing or walking required for the light occupation of office nurse DOT # 075.374-014 as described by the Department of Labor.

Pamela I. Atkins, Esq., Atkins & Associates , LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA 30338
Phone: (770) 399-9999; Fax: (770) 399-9939

16

81. Hartford's personnel performing EARs are required to be familiar with the Department of Labor's classification of jobs and the Dictionary of Occupational Titles.

82. To serve its own interests Hartford ignored Ms. Hood's information on her experience as an office nurse, ignored the Department of Labor information and the DOT, and ignored the core point of the 3 phone survey responses stating that the occupation of office nurse as performed was light, not sedentary.

### Hartford's Failure to Consider Ms. Hood's Congestive Heart Failure and Multiple Cardiac Catherizations and Stent Placements

83. The April 14, 2008, appeal letter by Ms. Hood states:

I have mild congestive heart failure. I have had five (5) cardiac catheterizations with stint insertions since March, 2007. For more information, you may contact my cardiologist:

Dr. Lee B Padove,
960 Johnson Ferry Road
Suite 336
Atlanta, Ga 30342
Ph#404-252-7400
Fax:404-252-1772

84. Despite obtaining a release from Ms. Hood to obtain her medical records, Hartford did not contact Dr. Padove for his records or his opinion and Hartford failed to inform Ms. Hood that she would have to obtain her own medial records and submit Dr. Padove's records and opinion in order for Hartford to consider this information.

Pamela I. Atkins, Esq., Atkins & Associates , LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA  30338
Phone: (770) 399-9999; Fax: (770) 399-9939

17

85. Hartford issued its denial on appeal less than 30 days after Ms. Hood provided this relevant information.

86. In denying Ms. Hood's, Hartford placed its own interests before those of Ms. Hood and refused to consider any restrictions and limitations associated with Ms. Hood's congestive heart failure and 5 procedures for cardiac catherizations and stent placements since March 2007.

**Hartford's Failure to Verify the Veracity of Dr. MacNeill's Opinion**

87. The April 14, 2008, appeal letter by Ms. Hood states:

> One of the criteria you based your decision on was Dr. MacNeill's evaluation on September 19, 2007 and a conversation with his office on February 20, 2008....The conversation with the office in February was one that Dr. MacNeill was unaware of.

88. Hartford took no action to follow-up on the veracity of the information allegedly provided by Dr. MacNeill or his office upon which Hartford relied to support its denial, and in its appeal uphold letter of May 13, 2008, Hartford relied upon a review of internal notes concerning the February 20, 2008 phone conversation with Dr. MacNeill's office.

89. Dr. MacNeill's office note of April 14, 2008 is attached hereto as Exhibit 4.

90. Dr. MacNeill's office note of April 14, 2008, reaffirms his opinion that his patient is limited to sedentary work no more than 30 hours per week with additional lifting restrictions.

91. Dr. MacNeill's office note of April 14, 2008, states his opinion that the occupations of office nurse and occupational health nursing would put "the patient at too much risk for reinjury and for increasing discomfort because of

Pamela I. Atkins, Esq., Atkins & Associates, LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA 30338
Phone: (770) 399-9999; Fax: (770) 399-9939

18

the need to be up and about seeing and treating patients....office nursing and its multi-tasking requirements would likely put her at too high a risk for further injury."

92. Dr. MacNeill's office note of April 14, 2008 was not considered by Hartford, and the company returned the submission to Ms. Hood refusing to give Dr. MacNeill's office notes of April 14, 2008 any consideration.

### Substantial Evidence Existed in the Claim File Supporting Continued Payment of LTD Benefits, Not Termination, and Hartford Placed Its Profitability Ahead of Ms. Hoods' Interests

93. By letter dated May 13, 2008, Hartford denied Ms. Hood's appeal accepting Dr. MacNeill's opinion as to Ms. Hood's functional capacity, but determining that Ms. Hood would be capable of performing the occupation of an office nurse DOT # 075.374-014.

94. Hartford's claim file documents that Ms. Hood is restricted from working the number of regularly scheduled hours in her work week which when she worked exceeded 30 hours per week; yet, Hartford placed its interests ahead of Ms. Hood's and failed to consider the number of regularly scheduled hours in Ms. Hood's work week as required by the policy.

95. Hartford's claim file documents Ms. Hood was being prescribed narcotic pain medication for severe pain which would impact her ability to perform work as an office nurse; yet Hartford placed its interests ahead of Ms. Hood's and failed to consider the effect of Ms. Hood's medications on her ability to perform the occupation of office nurse.

96. Hartford's claim file documents that Ms. Hood's is restricted from standing

Pamela I. Atkins, Esq., Atkins & Associates, LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA 30338
Phone: (770) 399-9999; Fax: (770) 399-9939

19

more than an hour at a time; yet Hartford placed its interests ahead of Ms. Hood's and failed to consider the effect of this standing restriction on Ms. Hood's ability to perform the light occupation of office nurse.

97. Hartford's claim file documents that Ms. Hood's is restricted from standing more than 1-2 hours in an 8 hour day; yet Hartford placed its interests ahead of Ms. Hood's and failed to consider the effect of this standing restriction on Ms. Hood's ability to perform the light occupation of office nurse.

98. Hartford's claim file documents that Ms. Hood's is restricted from walking more than an hour a day; yet Hartford placed its interests ahead of Ms. Hood's and failed to consider the effect of this walking restriction on Ms. Hood's ability to perform the light occupation of office nurse.

99. Hartford's claim file documents that Ms. Hood's is restricted from lifting more than 10 pounds occasionally; yet Hartford placed its interests ahead of Ms. Hood's and failed to consider fully the effect of this lifting restriction on Ms. Hood's ability to perform the light occupation of office nurse.

100. At the time of termination of her LTD benefits and continuing, Ms. Hood was prevented from performing one or more of the essential duties of any occupation for which she was qualified by education, training, or experience.

101. At the time of the termination of her LTD benefits, Ms. Hood was unable to be present at work for the number of hours in her normal work week.

102. At the time of termination of her benefits and continuing, Ms. Hood has not had earnings potential greater than an amount equal to the lesser of the product of her Indexed Pre-disability Earnings and the Benefit Percentage and the Maximum Monthly Benefit.

Pamela I. Atkins, Esq., Atkins & Associates , LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA 30338
Phone: (770) 399-9999; Fax: (770) 399-9939

20

103. Ms. Hood was forced to hire counsel to assist her with her denied claim.

104. At all relevant times, Ms. Hood has been disabled within the terms of the LTD Plan/Policy, at present remains disabled within the terms of the LTD Plan/Policy, and for an indefinite period of time in the future will be disabled within the terms of the LTD Plan/Policy.

### Hartford's Conflict of Interest

105. At all relevant times, Hartford has been operating under an inherent and structural conflict of interest because, on the one hand, Hartford is liable for benefit payments due to plaintiff, and on the other hand, each such payment depletes Hartford's assets.

106. Hartford's determination was influenced by its increased liability.

### Hartford Focuses Its Employees on Claims Outcomes

107. Defendant Hartford focuses its employees on claims outcomes.

108. Hartford instructs its employees to aggressively manage all claims to achieve "Outcomes" or "RTW"s.

109. The termination of Ms. Hood's claim was credited as a RTW outcome to certain Hartford employees.

110. "Outcomes" and "RTW" (return to work) are euphemisms that may equate with a cessation of Hartford paying benefits to an insured who does not actually return to gainful employment.

111. Under Hartford's practices, "RTW" does not mean only that an insured actually returned to work at a past employer or new employer.

Pamela I. Atkins, Esq., Atkins & Associates , LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA 30338
Phone: (770) 399-9999; Fax: (770) 399-9939

21

112. Under Hartford's practices, "RTW" also means that Hartford has determined that an insured has the ability despite the impairments, restrictions or limitations credited by Hartford to return to work.

113. Hartford has the ability to track all claims and review specific claims reserves attributable to a particular insured through databases that can be viewed through the Claims Outcome Tracking ("COT") and COMPASS.

114. If a Hartford employee starts tracking a claim in COT, that employee is charged with reaching an "Outcome" to signify the results of that employee's intervention in achieving "RTW".

115. "COT records all Actions and Outcomes in cases where the claim is managed aggressively to an early RTW," and this is set forth in the Hartford "Clinical Orientation Program Manual."

116. Lower level claims personnel have access to the COTS as do senior management.

117. Hartford employees have a monetary incentive to achieve "Outcomes" or "RTW."

118. Certain Hartford employees had a monetary incentive to achieve a RTW Outcome in Ms. Hood's case.

119. At times, Hartford uses COT to set targets for resolving pending claims.

120. Upon information and belief, employees of Hartford handling LTD claims have been known to alert their supervisors if not credited with a sufficient number of "RTWs" or "Outcomes."

Pamela I. Atkins, Esq., Atkins & Associates, LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA 30338
Phone: (770) 399-9999; Fax: (770) 399-9939

121. Upon information and belief, some performance appraisals of Hartford employees identify the specific sums of claims reserves that an employee has saved Hartford.

122. Despite certain employees suggestions to move Ms. Hood's claim to the SAM ("Stable and Mature") unit for continued payment past the 24 month change in definition, the claim was aggressively managed toward termination.

123. The corporate culture created by focusing on RTWs and Outcome and savings to Hartford contributed to the wrongful termination of Ms. Hood's LTD benefits and the appeal uphold of the termination.

### Hartford Provides Monetary Incentives to Employees

124. Hartford not only pays salary to its claims personnel, but depending on the employee's level, the employee may be eligible for either a Business Performance Award ("BPA") or an Individual Performance Award ("IPA") or both.

125. Hartford has other bonus programs available to claims employees, including one called Annual Incentive Program ("AIP").

126. BPA's are based on the profitability of the Group Benefits Division.

127. IPA's are awarded at the discretion of the manager based upon the performance of the employee.

128. Employees that save Hartford money by terminating or denying claims or achieving RTW Outcomes are more likely to be rewarded with bonuses than those who do not.

Pamela I. Atkins, Esq., Atkins & Associates , LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA  30338
Phone: (770) 399-9999; Fax: (770) 399-9939

23

129. The corporate culture created by providing monetary incentives for claims terminations to Hartford employees contributed to the wrongful termination of Ms. Hood's LTD benefits.

## Hartford Has Not Reduced Its Conflict of Interest

130. Hartford has failed to take active steps to reduce potential bias and to promote the accuracy of its benefit determinations.

131. During the appeal Hartford considered new information without notifying Ms. Hood or providing her any opportunity to comment and respond to the new information considered prior to denying her appeal on May 13, 2008.

132. Hartford failed to properly credit and to investigate the information provided by Ms. Hood in her appeal letter dated April 14, 2008.

133. Hartford has taken the position that Ms. Hood is capable of working a minimum of 30 hours per week performing the essential duties of the occupation of office nurse. Yet the record clearly reveals that Dr. MacNeill has repeatedly opined that Hood has permanent restrictions limiting her to very sedentary work and she is significantly limited in her ability to stand or walk.

## Hartford's Employability Assessment Reviews

134. The EAR in Ms. Hood's case was conducted in an unfair and biased manner; information obtained stating that the job of office nurse was a light job was consistent with the payment of the claim; yet, Hartford used this information to uphold its termination of benefits.

Pamela I. Atkins, Esq., Atkins & Associates , LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA 30338
Phone: (770) 399-9999; Fax: (770) 399-9939

24

**Hartford's Refusal to Provide Relevant BMS Guidelines:**

135. Ms. Hood, through her attorney, requested Hartford to provide The Benefit Management Services Reference Manual also known as the BMS.

136. The Benefit Management Services Reference Manual (hereinafter "BMS") is an on-line resource, available to Hartford employees.

137. The BMS was in use by Hartford employees at the time of the termination of Ms. Hood's LTD benefits and during Hartford's review of Ms. Hood's claim on appeal.

138. The BMS is distributed on-line to Hartford claims handlers and staff.

139. The individuals performing a review of Ms. Hood's claim on appeal would be required to rely on the BMS reference library as Hartford guidelines.

140. Hartford has taken the legal position that it expects its claims handlers and appeals people are knowledgeable with respect to the reference manual and Hartford expects its examiners and its team leaders to be knowledgeable and efficient in the use of the BMS.

141. The BMS guidelines concerning medical information, employability analysis during any occupation, use of earnings factors in any occupation analysis, best practices guidelines, claim investigation and gathering of medical information, coding, evaluating the functional capacity at any occupation, are just some of the information known to be contained in the BMS and relevant to Ms. Hood's claim, but withheld from Ms. Hood.

142. The failure to provide Ms. Hood with copies of relevant BMS guidelines or statements of policies or procedures which were available for use by the appeal specialist as a reference tool is a violation of ERISA.

Pamela I. Atkins, Esq., Atkins & Associates, LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA 30338
Phone: (770) 399-9999; Fax: (770) 399-9939

25

## COUNT I

Wrongful Termination and Denial of Disability Benefits
[RECOVERY OF PLAN BENEFITS, 29 U.S.C. § 1132(a)(1)(B)]

143. Plaintiff incorporates the allegations set forth above as if set forth in full herein.

144. 29 U.S.C. § 1132(a)(1)(B), ERISA § 502(a)(1)(B) authorizes a beneficiary, to recover benefits due under the terms of the Plan, to enforce rights under the terms of the Plan, and/or to clarify the right to future benefits under the terms of the Plan.

145. After paying Ms. Hood's LTD benefits under the own occupation definition of disability, Defendant Hartford reviewed Ms. Hood's claim under the after 24 month definition of disability and conducted an unfair and overtly suspect EAR and terminated further LTD benefits to Ms. Hood.

146. Defendant Hartford's termination of Ms. Hood's LTD benefits was wrong, unreasonable, intentionally self-serving, arbitrary and capricious, and without substantial evidentiary support. By denying Ms. Hood's LTD benefits claim, Defendant Hartford acting for itself and the LTD Plan violate 29 U.S.C. § 1132(a)(1)(B) , ERISA § 502(a)(1)(B).

147. Ms. Hood qualifies for LTD benefits under the Plan's definition of disability. Ms. Hood is entitled to LTD benefits payments from the termination of benefits on March 19, 2008 through the present and so long as she continues to be disabled under the terms of the LTD Plan/Policy.

148. Defendants agreed to pay Ms. Hood benefits under the terms of the Policy.

Pamela I. Atkins, Esq., Atkins & Associates , LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA 30338
Phone: (770) 399-9999; Fax: (770) 399-9939

26

Ms. Hood has satisfied all conditions for eligibility for receipt of benefits under the LTD Plan/Policy and has not waived or otherwise relinquished her rights.

149. As a direct and proximate result of the conduct of Defendants in terminating entitlement to benefits, Ms. Hood has been damaged in an amount presently unknown but to be set forth at the time of trial, but at least equal to the amount of benefits to which Ms. Hood is entitled under the terms of the LTD Plan/Policy. In addition Ms. Hood is entitled to recovery of interest on past due LTD benefits.

150. By wrongfully, intentionally, arbitrarily and capriciously terminating and denying Ms. Hood's LTD benefits claim, Defendant Hartford interfered with Ms. Hood's past, present and future rights and interests under the LTD Plan and any other employee benefit plans which allowed for continued benefits based on LTD status.

151. To date, Hartford has failed and refused to pay plaintiff the benefits to which she is rightfully entitled from August 29, 2008 to the present.

152. Plaintiff has satisfied all conditions precedent under the Plan and is thus eligible to receive benefits.

153. Hartford has a financial conflicts of interest with respect to making claims determinations involving plaintiff's disability benefits.

154. Hartford was influenced by its financial conflict of interest, as both the claims administrator and fiduciary of the Plan and the payor of benefits thereunder, when deciding to terminate and uphold the termination of plaintiff disability benefits.

Pamela I. Atkins, Esq., Atkins & Associates, LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA 30338
Phone: (770) 399-9999; Fax: (770) 399-9939

27

155. The unlawful behavior of Hartford is evidenced by the following:

    a) Discontinuing benefit payments to plaintiff at a time when it knew that she was entitled to said benefits under the terms of the Plan/Policy, in bad faith and contrary to the Plan/Policy;

    b) Unreasonably withholding payments from plaintiff knowing her claim for continued benefits was valid;

    c) Unreasonably failing to pay benefits without having any evidence, substantial or otherwise, supporting its decision to uphold the termination of benefits;

    d) Completely disregarding the authoritative source – the Dictionary of Occupational Titles – DOT- description and classification for the occupation of office nurse;

    e) Relying on three random phone calls to medical employers in another state to support the termination of benefits which in reality supported the continued payment of benefits;

    f) Tainting the appeals process by utilizing incorrect and dubious occupational criteria;

    g) Basing the termination of Ms. Hood's LTD benefits on the ability to perform the light strength occupation of office nurse;

    h) Relying upon an unfair, biased and overtly flawed November 5, 2007 Employability Analysis Review (EAR) and December 4, 2007 EAR Addendum by Kristel Tvrdik, MS, CRC,

    i) Selectively highlighting certain factors in medical reports in order to cast a favorable light on its position while ignoring the specific

Pamela I. Atkins, Esq., Atkins & Associates , LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA 30338
Phone: (770) 399-9999; Fax: (770) 399-9939

28

statements and conclusions of plaintiff's treating physicians regarding the conditions for which they render treatment;

j) Failing to consider the policy language concerning essential duties and the inability of Ms. Hood to work the number of regularly scheduled hours in her work week;

k) Failing to consider that Ms. Hood was being prescribed narcotic pain medication for severe pain which would impact her ability to perform work as an office nurse;

l) Disregarding plaintiff's own assessment of her medical condition and how it restricts and limits her from performing any occupation;

m) Engaging in a pattern of procedural irregularities to advance its own personal interests in terminating benefits to the detriment of a plan participant;

n) Consistently acting in their own personal interests instead of those of the Plan and its participants;

o) Improperly denying plaintiff benefits without any valid and credible information on the occupation of office nurse.

p) Improperly refusing to credit medical information and failing to obtain relevant medical records and opinions despite Ms. Hood's request to consider such information in her appeal.

q) Improperly refusing to provide information relevant to the denial determination, which they were obligated to provide pursuant to 29 C.F.R. § 2560.503(g), in violation of ERISA;

Pamela I. Atkins, Esq., Atkins & Associates , LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA 30338
Phone: (770) 399-9999; Fax: (770) 399-9939

29

r) Refusing to provide information requested in writing by Ms. Hood and her counsel and required to be provided in accordance with ERISA regulations including relevant sections of Hartford's guidelines the Benefit Management Services Manual ("BMS").

156. Hartford represented to plaintiff that benefits would be paid if she met the terms and conditions of the Plan, but failed to fulfill its obligation to discharge its duties solely in the interest of Plan participants.

157. Hartford breached its fiduciary duties to Plaintiff by wrongfully terminating LTD benefits and not providing Ms. Hood with a full and fair review of the termination of her LTD benefits.

158. Hartford breached its fiduciary duty to Plaintiff by placing its financial interests in reducing its expenses and increasing its profitability above Ms. Hood's interests under the LTD Plan and Policy to receive disability benefits.

159. A "higher than marketplace" quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (2008), applies to evaluating the actions of Hartford in this case.

160. Hartford was required to discharge its duties "solely in the interests of the participants and beneficiaries of the plan."

161. Hartford violated the higher-than-marketplace standards that ERISA imposes on insurers.

162. As a direct and proximate result of the conduct alleged herein, Plaintiff has been damaged in an amount equal to the amount of benefits she would have received had Hartford paid her benefits.

Pamela I. Atkins, Esq., Atkins & Associates, LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA 30338
Phone: (770) 399-9999; Fax: (770) 399-9939

30

163. Plaintiff has been forced to bring the instant action as a direct result of Hartford's unlawful denial and violations of the Plan and ERISA.

164. Under Section 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), Plaintiff is entitled to recover disability benefits under the LTD Plan that have not been paid to date, with interest, and those that will become due in the future.

## COUNT II

Attorneys Fees and Expenses and Costs of Litigation
Pursuant to 29 U.S.C. Section 1132(g)

165. Plaintiff incorporates the allegations set forth above in all preceding paragraphs as if set forth in full herein.

166. 29 U.S.C. § 1132(g)(1) authorizes this Court to award reasonable attorneys' fees and costs of action to either party in an ERISA action.

167. As a result of the actions and failings of the Defendants, Plaintiff has retained the services of legal counsel and has necessarily contracted to pay attorneys' fees and costs for prosecuting this action. Plaintiff therefore requests an award of reasonable attorneys' fees, expenses, and costs of litigation.

## PRAYER FOR RELIEF

For these reasons set forth above, Ms. Hood prays for the following relief:

i.    That the Court enter judgment in Plaintiff's favor and against Defendants.

ii.   That the Court Order defendant the Plan Administrator and Hartford to retroactively reinstate Ms. Hood as an LTD Plan beneficiary and maintain

Pamela I. Atkins, Esq., Atkins & Associates , LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA  30338
Phone: (770) 399-9999; Fax: (770) 399-9939

31

her status until such time as Ms. Hood is no longer disabled within the meaning of the LTD Plan/Policy.

iii. That the Court Order defendant Hartford to reinstate Ms. Hood as a LTD recipient and to pay all past due, present and continued LTD benefits under the terms of the LTD Plan and Policy until such time as Ms. Hood is no longer disabled within the meaning of the LTD Plan and Policy and enjoin defendant Hartford from engaging in an any further prohibited action under ERISA against Ms. Hood.

iv. That the Court Order defendant Hartford to pay Ms. Hood accrued prejudgment interest through the date of the judgment at the Georgia statutory rate for prejudgment interest for all past due benefits under the LTD Plan.

v. That the Court order and award payment of reasonable attorney fees, expenses, and costs incurred in this action pursuant to 29 U.S.C. § 1132(g).

vi. That the Court order such other and further legal or equitable relief as the Court deems appropriate.

Respectfully filed, this 8th day of December 2009.

_____

PAMELA I. ATKINS
Georgia State Bar No. 026302
Attorney for Plaintiff Donna Hood

ATKINS & ASSOCIATES, ATTORNEYS-AT-LAW, LLC
1117 Perimeter Center West; Suite W-405
Atlanta, Georgia 30338
Phone: (770) 399-9999; Fax: (770) 399-9939; patkins@adisability.com

Pamela I. Atkins, Esq., Atkins & Associates, LLC; 1117 Perimeter Center West, Suite W405, Atlanta, GA 30338
Phone: (770) 399-9999; Fax: (770) 399-9939

32