IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DONNA HOOD | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: |
| | ) | 1:09-cv-3455-CC |
| HARTFORD LIFE AND ACCIDENT | ) | |
| INSURANCE COMPANY; and | ) | |
| | ) | |
| GROUP LONG TERM DISABILITY | ) | |
| PLAN FOR EMPLOYEES OF | ) | |
| CHILDREN'S HEALTHCARE OF | ) | |
| ATLANTA, WHICH IS PART OF | ) | |
| CHILDREN'S WELFARE | ) | |
| BENEFITS PROGRAM | ) | |
| | ) | |
| Defendants | ) | |

## AMENDED ANSWER OF
## HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY

Now comes defendant HARTFORD LIFE AND ACCIDENT INSURANCE

COMPANY ("Hartford"), and for its amended answer to plaintiff's complaint,

states as follows:

### First Defense

Plaintiff is not disabled under the terms of the group long-term disability

insurance policy, Policy No. GLT-674187 ("the group policy") issued to Child

Health Corporation of America to fund long-term disability benefits under an

employee welfare benefit plan ("the Plan"), sponsored and maintained by

plaintiff's former employer, Children's Healthcare of Atlanta, within the meaning of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq.*

## Second Defense

Plaintiff is not entitled to additional long-term disability benefits under the group policy.

## Third Defense

Hartford's decision to deny plaintiff's claim for long-term disability benefits under the group policy was not arbitrary and capricious or an abuse of discretion.

## Fourth Defense

Hartford's decision to deny plaintiff's claim for long-term disability benefits under the group policy was the product of a deliberate, principled reasoning process.

## Fifth Defense

Hartford's decision to deny plaintiff's claim for long-term disability benefits under the group policy was supported by substantial evidence in the administrative record.

## Sixth Defense

Hartford discharged its duties with respect to the Plan in accordance with the documents and instruments governing the Plan and ERISA.

**Seventh Defense**

Hartford discharged its duties with respect to the Plan in the interest of all of the Plan participants and their beneficiaries, and in doing so, Hartford acted in accordance with the terms of the Plan.

**Eighth Defense**

If long-term disability benefits were payable, which is denied, they would be offset and reduced by other income benefits as provided for in the group policy.

**Ninth Defense**

Plaintiff's claim for breach of fiduciary duty against Hartford fails to state claim on which relief can be granted.

**Tenth Defense**

Plaintiff's claim for benefits "that will become due in the future" or "continuing benefits" do not state a claim upon which relief may be granted, as plaintiff is not entitled to an award of future benefits.

**Eleventh Defense**

Hartford has moved to strike certain allegations of the complaint pursuant to F.R.C.P. 12(f) and should not be compelled to answer such allegations.

**Twelfth Defense**

Hartford answers the numbered paragraphs of plaintiff's complaint as follows:

## A.  Jurisdiction

1.

Answering paragraph 1, Hartford admits that plaintiff's claims relate to an employee welfare benefit plan ("the Plan"), sponsored and maintained by plaintiff's employer, Children's Healthcare of Atlanta ("CHOA"), within the meaning of ERISA, and that plaintiff's claims for benefits are governed by ERISA. Hartford also admits that jurisdiction is proper under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e).  Except as expressly admitted, paragraph 1 is denied.

2.

Answering paragraph 2, Hartford admits that venue is proper under 29 U.S.C. § 1132(e), but denies that any "breach" took place.  Except as expressly admitted, paragraph 2 is denied.

3.

Answering paragraph 3 of plaintiff's complaint, Hartford admits that plaintiff exhausted her administrative remedies as to her continuing eligibility for long-term disability benefits before filing this action.  Except as expressly admitted, paragraph 3 is denied.

## B.  Parties, Entities and Relationships

4.

Answering paragraph 4 of plaintiff's complaint, Hartford admits the

allegations of paragraph 4 based on the information in the administrative record.

5.

Answering paragraph 5 of plaintiff's complaint, Hartford admits that based on the information in the administrative record, plaintiff was employed by CHOA at the time she made her claim for disability benefits and was a participant in the Plan.  Except as expressly admitted herein, paragraph 5 is denied.

6-7.

Hartford is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 6-7, and therefore denies them.

8-9.

Answering paragraphs 8 and 9 of plaintiff's complaint, Hartford admits that it issued the group policy to Child Health Corporation of America to fund long-term disability benefits under the Plan, which was sponsored and maintained by plaintiff's former employer, and that employees of CHOA were eligible to participate in the Plan funded by the group policy.  Except as expressly admitted herein, paragraphs 8-9 are denied.

10.

Answering paragraph 10 of plaintiff's complaint, Hartford admits that it issued the group policy, with an effective date of January 1, 2002, to Child Health Corporation of America to fund long-term disability benefits under the Plan.

Hartford admits that a copy of the January 1, 2002 booklet-certificate for the group policy, which is also the Summary Plan Description ("SPD"), is attached to plaintiff's complaint as Exhibit 1.  Except as expressly admitted herein, paragraph 10 is denied.

## 11.

Answering paragraph 11 of plaintiff's complaint, Hartford admits that the document attached to the complaint as Exhibit 2 states that the policyholder is "The Trustees of the Healthcare Benefits Alliance Trust," but denies that the document is the Summary Plan Description ("SPD") or the relevant booklet-certificate.

## 12.

For its answer to paragraph 12, Hartford denies that the correct plan sponsor or plan administrator for the time period of the claim at issue in this case is referenced in Exhibit 2 to plaintiff's complaint, described in paragraph 12 as the "Booklet or SPD."   For further answer, as reflected in the consent order entered on February 17, 2010, the parties have substituted the proper plan as defendant.  For further answer, Hartford is without knowledge or information sufficient to form a belief as to the truth of the allegations relating to the alleged August 5, 2009 letter from CHOA to plaintiff's counsel, as these allegations concern information not contained in the administrative record and relate to matters that occurred, if at all,

after the final claim decision.  Except as expressly admitted, paragraph 12 is denied.

### 13.

Answering paragraph 13 of plaintiff's complaint, Hartford admits that CHOA is the employer under the group policy effective January 1, 2002.  Except as expressly admitted herein, paragraph 13 is denied.

### 14-15.

For its answer to paragraphs 14 and 15, Hartford admits that the January 1, 2002 booklet-certificate for the group policy, which is also the SPD, states that the "employer pays the premium for the insurance, but may allocate part of the cost to the employee."  Further answering, Hartford admits that CHOA, and not Plan participants, paid the premiums.  Except as expressly admitted herein, paragraphs 14-15 are denied.

### 16.

Answering paragraph 16 of plaintiff's complaint, Hartford admits that the quoted material in paragraph 16 is a page from the "Plan Booklet or SPD" attached as Exhibit 2 to plaintiff's complaint, but denies that it is the relevant Plan name. For further answer, as reflected in the consent order entered on February 17, 2010, the parties have substituted the proper plan as defendant.

17.

Answering paragraph 17 of plaintiff's complaint, Hartford admits the allegations of paragraph 17, except that it was not a "designated fiduciary," but rather a claim fiduciary.  Except as expressly admitted herein, paragraph 17 is denied.

18.

Paragraph 18 is admitted.

19.

Answering paragraph 19, Hartford admits that it pays eligible and compensable claims under the group policy from its own assets but denies that there was a conflict or any impact on the claim decision in this case.

20.

Paragraph 20 is denied.

21.

Paragraph 21 is admitted.

22.

For its answer to paragraph 22, Hartford admits that the Plan may be served with process upon its agent or the plan administrator, but denies that the agent or plan administrator for the time period of the claim at issue is correctly identified in paragraph 22.

## C.  Additional Facts Common to All Counts

23.

Answering paragraph 23 of plaintiff's complaint, Hartford admits that at the time plaintiff filed a claim for long-term disability benefits, she advised that she was a licensed registered nurse employed as a "Staff Nurse 2" at CHOA and that, according to the information in the administrative record, her monthly salary was $4,977.96.  Hartford denies that plaintiff is disabled from "any occupation" as defined by the group policy.  Except as expressly admitted herein, paragraph 23 is denied.

24.

Answering paragraph 24 of plaintiff's complaint, Hartford admits that plaintiff had worked at CHOA since 1982 before her last day of work on or about October 17, 2005.  Except as expressly admitted herein, paragraph 24 is denied.

25.

Answering paragraph 25 of plaintiff's complaint, Hartford admits that plaintiff advised it that she worked over 30 hours per week.  Except as expressly admitted herein, paragraph 25 is denied.

26.

Answering paragraph 26 of plaintiff's complaint, Hartford admits that plaintiff advised that she worked 36-40 hours per week and 12-hour shifts three

days per week.  Except as expressly admitted herein, paragraph 26 is denied.

27.

Answering paragraph 27 of plaintiff's complaint, Hartford admits that plaintiff advised it that CHOA could not accommodate her alleged restrictions and limitations.  Hartford denies the remaining allegations of paragraph 27.

28.

For its answer to paragraph 28, Hartford admits that plaintiff was unable to return to her occupation as a nurse at CHOA.  Hartford denies the remaining allegations of paragraph 28, and to be more specific, there is no indication in the administrative record that plaintiff was "distress[ed]".

29.

Answering paragraph 29 of plaintiff's complaint, Hartford admits that plaintiff had worked at CHOA since 1982 and that she advised it of the areas in which she worked, which are listed in paragraph 29.  Except as expressly admitted herein, paragraph 29 is denied.

30.

Hartford is unfamiliar with the document from which paragraph 30 is quoted and thus is without sufficient information and knowledge to form a belief as to the truth of the allegations asserted therein.

31.

Answering paragraph 31 of plaintiff's complaint, Hartford admits that plaintiff attached a document entitled "Your Total Rewards 2006" to her complaint as Exhibit 3. Hartford is without sufficient information and knowledge to form a belief as to whether the document is true and accurate. The remaining allegation of paragraph 31, which relates to "the year Ms. Hood terminated," is neither admitted nor denied because Hartford can only speculate as to plaintiff's meaning of that phrase.

32.

Paragraph 32 is denied.

33.

Answering paragraph 33 of plaintiff's complaint, Hartford admits the administrative record reflects that:  plaintiff was diagnosed with lumbar radiculitis; she underwent lumbar spinal fusion surgery on October 19, 2005; and she advised that she was diagnosed with mild congestive heart failure.  Except as expressly admitted herein, paragraph 33 is denied.

34.

Answering paragraph 34 of plaintiff's complaint, Hartford admits that the administrative record reflects:  plaintiff's diagnoses of lumbar radiculitis and antalgic gait and that she had been prescribed 5 milligrams of Hydrocodone, as

noted by Dr. MacNeill on September 18, 2007; the October 19, 2005 lumbar spinal

fusion surgery and subsequent spinal fluid leak repair surgery; plaintiff's

complaints of leg and back pain; spinal cord stimulator placement in December

2006; and that plaintiff advised that she had been diagnosed with mild congestive

heart failure and had had multiple stent placements since March 2007.  Except as

expressly admitted herein, paragraph 34 is denied.

35.

Answering paragraph 35 of plaintiff's complaint, Hartford admits that it

received information from plaintiff's treating physicians throughout the course of

her claim for long-term disability benefits and that during the time the claim was

being paid, it determined that she was "under the Regular Care of a Physician," as

defined by the group policy.  For further answer, Hartford can neither admit nor

deny that plaintiff was "under the continuous care" of any physician because

Hartford can only speculate as to plaintiff's meaning of that phrase.  For further

answer, Hartford is without sufficient knowledge and information upon which to

form a belief as to the truth of whether plaintiff was "under the Regular Care of a

Physician" or "under the continuous care" of a physician after her claim was

denied.  Except as expressly admitted herein, paragraph 35 is denied.

36.

Answering paragraph 36, Hartford admits that plaintiff was unable to do her

"own occupation" during the own occupation period, but denies the remaining allegations of paragraph 36.

37.

Answering paragraph 37 of plaintiff's complaint, Hartford admits that plaintiff submitted a claim for benefits dated January 10, 2006.

38.

Answering paragraph 38 of plaintiff's complaint, Hartford admits that it determined that plaintiff was disabled from her occupation, as defined by the group policy, as of October 19, 2005 and that following the elimination period, long-term disability benefits began on March 19, 2006.  Except as expressly admitted herein, paragraph 38 is denied.

39.

Hartford admits that it determined that plaintiff was eligible for short-term disability benefits as of October 19, 2005, subject to the exhaustion of her earned time off and, accordingly, that short-term disability benefits were paid from January 1, 2006 through March 18, 2006.  Hartford also admits that plaintiff satisfied the elimination period of the group policy and was disabled from her occupation as of October 19, 2006, as those terms are defined by the group policy. Except as expressly admitted herein, paragraph 39 is denied.

40.

Hartford admits that plaintiff received short-term disability payments from January 1, 2006 through March 18, 2006; that she satisfied the elimination period, as defined by the group policy; and that it began paying long-term disability benefits to plaintiff beginning on March 19, 2006, after determining that she was disabled from her occupation, as defined by the group policy.  Except as expressly admitted herein, paragraph 40 is denied

41.

Hartford admits only that the amount alleged in paragraph 41 is her gross benefit.

42.

Answering paragraph 42, Hartford admits that paragraph 42 accurately quotes a portion of the definition of disability in the January 1, 2002 booklet-certificate for the group policy, except that the first line after "5.  Pregnancy," should read: "from performing *one or more of* the Essential Duties of Your Occupation…" (emphasis added to highlight text omitted from plaintiff's quotation of definition). However, Hartford denies that the definition is quoted in full, as the capitalized terms in paragraph 42 are further defined in the January 1, 2002 booklet-certificate for the group policy, and denies any inferences drawn that are inconsistent with a reading of the booklet-certificate as a whole.

43-45.

Paragraphs 43-45 are admitted, insofar as they accurately quote portions of the definitions listed in paragraphs 43-45. However, Hartford denies that the definitions are quoted in full, as the capitalized terms in paragraphs 43-45 are further defined in the January 1, 2002 booklet-certificate for the group policy, and denies any inferences drawn that are inconsistent with a reading of the booklet-certificate as a whole.

46-48.

Paragraphs 46, 47 and 48 are admitted.

49.

For its answer to paragraph 49, Hartford admits that the January 1, 2002 booklet-certificate for the group policy reflects a benefit percentage of 60% of plaintiff's Monthly Income Loss, minus Other Income Benefits.

50.

Answering paragraph 50, Hartford admits that according to the January 1, 2002 booklet-certificate for the group policy, "any occupation" identified that plaintiff could perform based on her education, training, work history, and within her restrictions and limitations, had to have earnings potential greater than 60% of plaintiff's Pre-disability Earnings of $5,306.32, which was $3,183.80 per month. Except as expressly admitted herein, paragraph 50 is denied.

51.

Paragraph 51 is denied.  For further answer, Hartford admits that the maximum duration of benefits for plaintiff is through age 66.

52.

Hartford admits that plaintiff reported her birth date as August 16, 1950 and that she would turn 65 on August 16, 2015.  Except as expressly admitted herein, paragraph 52 is denied.

53.

Answering paragraph 53 of plaintiff's complaint, Hartford admits that in the September 18, 2007 Attending Physician Statement ("APS"), Dr. MacNeill listed permanent restrictions and limitations for plaintiff, which are generally summarized in paragraph 53, but denies that the APS "clarified" that plaintiff was "limited to no more than part-time sedentary work."  Except as expressly admitted herein, paragraph 53 is denied.

54.

Answering paragraph 54 of the complaint, Hartford admits that it received and reviewed the restrictions and limitations of Dr. MacNeill but otherwise the allegations are denied.

55.

Answering paragraph 55 of plaintiff's complaint, Hartford admits that it paid

benefits to plaintiff for the period of March 19, 2006 through March 18, 2008, after

determining that plaintiff was disabled from her occupation as defined by the

group policy.  Except as expressly admitted herein, paragraph 55 is denied.

56.

Answering paragraph 56 of plaintiff's complaint, Hartford admits that by

letter of March 10, 2008, it determined that plaintiff was not disabled from "any

occupation" as defined by the group policy, but denies that it "wrongfully

terminated" benefits.   Except as expressly admitted herein, paragraph 56 is denied.

57.

Answering paragraph 57of plaintiff's complaint, Hartford admits that it

received and reviewed the restrictions and limitations provided in Dr. MacNeill's

September 18, 2007 APS and that Hartford determined that she could perform the

occupation of office nurse with the restrictions and limitations stated in the APS.

Except as expressly admitted herein, paragraph 57 is denied.

58.

Paragraph 58 is admitted.

59.

Answering paragraph 59 of plaintiff's complaint, Hartford admits that

during its investigation of plaintiff's appeal, Hartford determined that the position

of occupational nurse would require lifting greater than 10 pounds and would be

inappropriate for plaintiff.  Hartford also admits that it determined that plaintiff

could perform the position of office nurse for up to 30 hours per week and that the

position had earnings potential of $3,183.80. Except as expressly admitted herein,

paragraph 59 is denied.

**To the extent the caption or subtitle in the complaint prior to paragraph**

**60 is an allegation, Hartford denies it.**

60.

Answering paragraph 60, Hartford admits that plaintiff submitted an appeal

letter dated April 14, 2008, and that the indented text of paragraph 60 accurately

quotes a portion of that letter.  However, Hartford denies that the letter is quoted in

full, and denies any inferences drawn that are inconsistent with a reading of the

entire document.  Except as expressly admitted herein, paragraph 60 is denied.

61.

Paragraph 61 is denied.

62.

For its answer to paragraph 62, Hartford admits that the standing and lifting

restrictions listed in paragraph 62, as described in the U.S. Department of Labor's

1991 Dictionary of Occupational Titles' ("DOT") definition of "light work",

exceed the restrictions and limitations for standing and lifting that are stated in Dr.

MacNeill's September 18, 2007 APS.  Hartford denies that the occupation of office

nurse is always considered "light work."

63.

Hartford admits that in its May 13, 2008 letter upholding its claim decision, it stated, among other things, that it had performed a Labor Market Survey, in which various employers were contacted regarding the requirements of the position of office nurse, and that the result of the Labor Market Survey, as well as a review by Hartford's Rehabilitation Clinical Case Manager, supported Hartford's conclusion that the occupation of office nurse would not require duties in excess of plaintiff's limitations.  Except as expressly admitted herein, paragraph 63 is denied.

64.

Answering paragraph 64 of plaintiff's complaint, Hartford admits that it conducted a Labor Market Survey of eight employers, three of whom were willing to participate, to clarify the lifting requirements of an office nurse position. Hartford denies the remaining allegations of paragraph 64.

65.

Answering paragraph 65 of plaintiff's complaint, Hartford admits that in making its final claim determination, it considered, among other things, the results of the Labor Market Survey.  Except as expressly admitted herein, paragraph 65 is denied.

66.

Answering paragraph 66 of plaintiff's complaint, Hartford admits that the

administrative record does not expressly reflect the names, positions or

qualifications of the individuals in each office with whom its Rehabilitation

Clinical Case Manager ("RCCM") spoke, but denies that it was required to do so.

Hartford denies the remaining allegations of paragraph 66 as stated.

67.

Answering paragraph 67 of plaintiff's complaint, Hartford admits that it

upheld its claim decision and that the Labor Market Survey was considered, as

well as the entire claim file, by Hartford's RCCM in concluding that plaintiff

would be capable of working as an office nurse.  Except as expressly admitted

herein, paragraph 67 is denied.

68.

Paragraph 68 is denied.

69.

Paragraph 69 is admitted.

70.

Paragraph 70 is admitted, except that Hartford denies any inference that the

DOT's classification of office nurse supports plaintiff's claim that she is totally

disabled from "any occupation."  For further answer, Hartford admits that it

determined that plaintiff could perform the occupation of office nurse after analyzing, among other things, the DOT's classification of the occupation.

71.

Paragraph 71 is denied as stated, because Hartford confirmed that the occupation was described as "fairly light" or "very light".

72.

Answering paragraph 72, Hartford admits that the definition of "light work" as defined by DOT is accurately quoted, except that plaintiff appears to have inserted the parenthetical definitions of "occasionally" and "frequently" from the DOT's definition of "sedentary work."  Hartford denies that the occupation of office nurse it identified for plaintiff met the criteria for "light work", as the employers contacted described the occupation as "fairly light" or "very light". Except as expressly admitted herein, paragraph 72 is denied.

73.

Answering paragraph 73, Hartford admits that paragraph 73 accurately quotes a portion of the definition of "sedentary work" as defined by the DOT. However, Hartford denies that the definition is quoted in full, and denies any inferences drawn that are inconsistent with a reading of the entire definition. Hartford denies that plaintiff could only perform sedentary work.

74.

Answering paragraph 74, Hartford admits that the occupation of office nurse may, but not necessarily, require physical demands in excess of those for sedentary work.  For further answer, the remaining allegation of paragraph 74, which relates to how the occupation of office nurse is "normally performed," is neither admitted nor denied because Hartford can only speculate as to plaintiff's meaning of that phrase.  Except as expressly admitted herein, paragraph 74 is denied.

75.

Answering paragraph 75, Hartford admits that the DOT categorizes the occupation of office nurse as "light" and that the DOT's definition of "light work" states that its physical demands are in excess of those required for sedentary work. Except as expressly admitted herein, paragraph 75 is denied.

76.

Hartford admits that the DOT's definition of "light work" requires "walking or standing to a significant degree", except that it denies any inference that the DOT's classification of office nurse supports plaintiff's claim that she is totally disabled from "any occupation."  For further answer, Hartford admits that it determined that plaintiff could perform the occupation of office nurse after analyzing, among other things, the DOT's classification of the occupation.  Further answering, the remaining allegation of paragraph 76, which relates to how the

occupation of office nurse is "normally performed," is neither admitted nor denied

because Hartford can only speculate as to plaintiff's meaning of that phrase.

Except as expressly admitted herein, paragraph 76 is denied.

77.

Answering paragraph 77, Hartford admits that the DOT categorizes the

occupation of office nurse as "light" and that the DOT's definition of "light work"

includes the physical demands stated in paragraph 77, except that it denies any

inference that the DOT's classification of office nurse supports plaintiff's claim

that she is totally disabled from "any occupation."  For further answer, Hartford

admits that it determined that plaintiff could perform the occupation of office nurse

after analyzing, among other things, the DOT's classification of the occupation.

Further answering, Hartford can neither admit nor deny the remaining allegation of

paragraph 77, which relates to how the occupation of office nurse is "normally

performed," because Hartford can only speculate as to plaintiff's meaning of that

phrase.  Except as expressly admitted herein, paragraph 77 is denied.

78-80.

Paragraphs 78-80 are denied.  For further answer, Dr. MacNeill's September

18, 2007 APS does not reference the DOT or any specific occupation.

81.

Paragraph 81 is admitted.

82.

Paragraph 82 is denied.

**To the extent the caption or subtitle in the complaint prior to paragraph 83 is an allegation, Hartford denies it.**

83.

Answering paragraph 83, Hartford admits that plaintiff submitted an appeal letter dated April 14, 2008, and that the indented text of paragraph 83 accurately quotes a portion of that letter.  However, Hartford denies that the letter is quoted in full, and denies any inferences drawn that are inconsistent with a reading of the entire document.  Except as expressly admitted herein, paragraph 83 is denied.

84.

Answering paragraph 84 of plaintiff's complaint, Hartford admits that plaintiff signed an Authorization to Obtain and Release Information during the claim process and that it did not contact Dr. Padove directly, but denies that it was required to do so.  Hartford denies the remaining allegations of paragraph 84.

85.

Answering paragraph 85 of plaintiff's complaint, Hartford admits that it issued its final claim decision by letter of May 13, 2008, which was 29 days after the date of plaintiff's appeal letter.  Except as expressly admitted herein, paragraph 85 is denied.

86.

Paragraph 86 is denied.

**To the extent the caption or subtitle in the complaint prior to paragraph 87 is an allegation, Hartford denies it.**

87.

Answering paragraph 87, Hartford admits that plaintiff submitted an appeal letter dated April 14, 2008, and that the indented text of paragraph 87 accurately quotes a portion of that letter.  However, Hartford denies that the letter is quoted in full, and denies any inferences drawn that are inconsistent with a reading of the entire document.  Except as expressly admitted herein, paragraph 87 is denied.

88.

Answering paragraph 88, Hartford admits that it confirmed the accuracy of its records relating to the February 20, 2008 phone conversation with Dr. MacNeill's office.  Hartford denies the remaining allegations of paragraph 88.

89.

Answering paragraph 89 of plaintiff's complaint, Hartford admits that plaintiff has attached an April 14, 2008 office note from Dr. MacNeill to her complaint as Exhibit 4.  For further answer, Hartford states that this document is not part of the administrative record before Hartford when it made its final claim decision, and it therefore may not be considered by this Court.

90-91.

For its answer to paragraphs 90 and 91, Hartford states that this document is not part of the administrative record before Hartford when it made its final claim decision, and it therefore may not be considered by this Court, and that it is without sufficient knowledge and information upon which to form a belief as to the truth of anything in the document.

92.

Answering paragraph 92 of plaintiff's complaint, Hartford admits that it received additional information from plaintiff on or about July 17, 2008, over three months after its final claim decision, and therefore did not consider the information in its final claim decision, and that it properly returned the information to plaintiff.

**To the extent the caption or subtitle in the complaint prior to paragraph 93 is an allegation, Hartford denies it.**

93.

Answering paragraph 93 of plaintiff's complaint, Hartford admits that it denied plaintiff's appeal by letter of May 13, 2008, which noted, among other things, the restrictions provided by Dr. MacNeill and that plaintiff would be capable of performing the occupation of office nurse.  Except as expressly admitted herein, paragraph 93 is denied.

94.

Answering paragraph 94, Hartford admits that Dr. MacNeill opined that plaintiff could work up to 30 hours per week, and that when plaintiff previously performed her own occupation at CHOA, she worked over 30 hours per week. Hartford denies that the number of hours plaintiff worked in her former occupation is relevant to its determination that she was not disabled from "any occupation," as defined by the group policy.  Hartford denies the remaining allegations of paragraph 94.

95.

Answering paragraph 95, Hartford admits that in his September 18, 2007 APS, Dr. MacNeill noted that plaintiff had been prescribed 5 milligrams of Hydrocodone.  Hartford denies the remaining allegations of paragraph 95.

96.

Answering paragraph 96, Hartford admits that in his September 18, 2007 APS, Dr. MacNeill restricted plaintiff's standing to up to 1 hour at a time. Hartford denies the remaining allegations of paragraph 96.

97.

Answering paragraph 97, Hartford admits that in his September 18, 2007 APS, Dr. MacNeill restricted plaintiff's standing to 1-2 hours per day in an 8-hour day.  Hartford denies the remaining allegations of paragraph 97.

98.

Answering paragraph 98, Hartford admits that in his September 18, 2007 APS, Dr. MacNeill restricted plaintiff's walking to up to 1 hour per day.  Hartford denies the remaining allegations of paragraph 98.

99.

Answering paragraph 99, Hartford admits that in his September 18, 2007 APS, Dr. MacNeill restricted plaintiff to lifting up to 10 pounds occasionally.  Hartford denies the remaining allegations of paragraph 99.

100-102.

Paragraphs 100-102 are denied.

103.

Answering paragraph 103 of plaintiff's complaint, Hartford is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 103, and therefore denies them.

104.

Answering paragraph 104 of plaintiff's complaint, Hartford is without knowledge or information sufficient to form a belief as to the truth as to whether plaintiff "for an indefinite period of time in the future will be disabled within the terms of the LTD Plan/Policy," and therefore denies them.  Hartford denies the remaining allegations of paragraph 104.

105-106.

Paragraphs 105 and 106 are denied.

**To the extent the captions or subtitles prior to paragraphs 107 and 124 are**

**allegations, Hartford denies them.**

107-129.

Paragraphs 107-129 are the subject of Hartford's motion to strike, filed contemporaneously with its answer, and therefore do not require a response. Alternatively, should a response be required before the Court's ruling on the motion to strike, paragraphs 107-129 are deemed denied as stated. Hartford reserves the right to amend and/or supplement its response to paragraphs 107-129 after the Court's ruling on its motion to strike.

**To the extent the caption or subtitle prior to paragraph 130 is an**

**allegation, Hartford denies it.**

130.

Paragraph 130 is denied.

131.

Hartford admits that it properly considered the information submitted in support of plaintiff's claim and appeal before making its final claim decision on May 13, 2008.  Hartford denies the remaining allegations of paragraph 131.

132.

Paragraph 132 is denied.

133.

Hartford admits that plaintiff was capable of working as an office nurse up to 30 hours per week and pursuant to certain restrictions and limitations.  Hartford denies the remaining allegations of paragraph 133.

134.

Paragraph 134 is denied.

**To the extent the caption or subtitle prior to paragraph 135 is an allegation, Hartford denies it.**

135-138.

Answering paragraphs 135-138 of the complaint, Hartford admits that it has an on-line manual which is available to its employees, which was in use at the time of plaintiff's claim, and that the employees of Hartford are knowledgeable about it. Except as set out herein, the allegations of paragraphs 135-138 are denied.

139.

The allegations of paragraph 139 are denied as stated.

140.

The allegations of paragraph 140 are admitted except Hartford denies that it has taken a legal position with regard to the allegations.

141-142.

The allegations of paragraphs 141 and 142 are denied.

## Count I

Wrongful Termination and Denial of Disability Benefits
[Recovery of Plan Benefits, 29 U.S.C. § 1132(a)(1)(B)]

143.

For its answer to paragraph 143, Hartford adopts and incorporates by reference paragraphs 1-142 of its answer as if set forth herein verbatim.

144.

Hartford admits that paragraph 144 generally summarizes the relief provided by § 1132(a)(1)(B) of ERISA. However, Hartford denies that it is a full recitation of the statute and denies any inferences drawn that are inconsistent with a reading of the entire statute.  Except as expressly admitted, paragraph 144 is denied.

145.

Answering paragraph 145 of plaintiff's complaint, Hartford admits that it paid plaintiff long-term disability benefits for a period of 24 months after it determined that plaintiff was disabled from her occupation, as defined by the group policy, and that it subsequently conducted a review as to whether plaintiff was disabled from "any occupation", as defined by the group policy.  Hartford denies the remaining allegations of paragraph 145.

146-147.

Paragraphs 146 and 147 are denied.

148.

Answering paragraph 148, Hartford denies the allegations as stated and states that it pays claims that are payable under the terms of the group policy and denies those that are not.

149-150.

Paragraphs 149 and 150 are denied.

151.

Answering paragraph 151 of plaintiff's complaint, Hartford admits that it denied plaintiff's claim for long-term disability benefits under the "any occupation" definition of the group policy, beginning on March 19, 2008.  The remaining allegations of paragraph 151 are denied.

152-153.

Paragraphs 152 and 153 are denied.

154.

Answering paragraph 154 of plaintiff's complaint, Hartford admits that it was the claims fiduciary, claim administrator, and payor of claims under the Plan. Hartford denies the remaining allegations of paragraph 154.

155.

Paragraph 155 is denied.

156.

Answering paragraph 156 of plaintiff's complaint, Hartford admits that long-term disability benefits are payable to eligible participants pursuant to the terms and conditions of the group policy, but denies that benefits were payable to plaintiff.  Hartford denies the remaining allegations of paragraph 156.

157-158.

Paragraphs 157 and 158 are denied.

159.

Hartford admits that the court in *Metropolitan Life Ins. Co. v. Glenn,* 128 S. Ct. 2343, 2350 (2008), stated, among other things, that "ERISA imposes higher-than-marketplace quality standards on insurers."  However, Hartford denies that the portion of the opinion referenced in paragraph 159 is a full and accurate recitation of the opinion, and denies any inferences drawn that are inconsistent with a reading of the entire opinion.  Hartford also denies that the facts of *Glenn* are analogous to the case at hand.  Except as expressly admitted herein, paragraph 159 is denied.

160.

Hartford admits that the court in *Glenn,* 128 S. Ct. at 2350, stated, among

other things, that ERISA requires that "the administrator 'discharge [its] duties' in respect to discretionary claims processing 'solely in the interests of the participants and beneficiaries' of the plan."  However, Hartford denies that the portion of the opinion quoted in paragraph 160 is a full and accurate recitation of the opinion, and denies any inferences drawn that are inconsistent with a reading of the entire opinion.  Hartford also denies that the facts of *Glenn* are analogous to the case at hand and denies any inference that it did not discharge its duties under the Plan and ERISA.  Except as expressly admitted herein, paragraph 160 is denied.

161-162.

Paragraphs 161 and 162 are denied.

163.

Answering paragraph 163 of plaintiff's complaint, Hartford denies the allegations of "unlawful denial and violations of the Plan and ERISA."  Hartford is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 163, and therefore denies them.

164.

Paragraph 164 is denied.

**Count II**

Attorneys Fees and Expenses and Costs of Litigation
Pursuant to 29 U.S.C. Section 1132(g)

165.

For its answer to paragraph 165, Hartford adopts and incorporates by reference paragraphs 1-164 of its answer as if set forth herein verbatim.

166.

Paragraph 166 is admitted, except that it denies that plaintiff is entitled to attorney's fees.

167.

Paragraph 167 is denied.

168.

Any and all allegations, contentions, or prayers for relief not specifically admitted herein are hereby denied.

WHEREFORE, having fully answered paragraphs 1-106 and 130-167 of plaintiff's complaint, asserted its affirmative defenses and contemporaneously moved to strike paragraphs 107-129 and exhibit 4 of the complaint, defendant Hartford Life and Accident Insurance Company prays that the complaint be dismissed with all costs cast upon plaintiff.

This 5th day of March, 2010.

*[signatures on following page]*

*s/ Elizabeth J. Bondurant*
Elizabeth J. Bondurant
Georgia Bar No. 066690
*s/ Jennifer L. Noland*
Jennifer L. Noland
Georgia Bar No. 411044

Attorneys for Defendant
Hartford Life and Accident Insurance
Company

SMITH MOORE LEATHERWOOD LLP
2300 Atlantic Center Plaza
1180 West Peachtree Street
Atlanta, Georgia 30309
(404) 962-1000 (telephone)
(404) 962-1200 (facsimile)
*lisa.bondurant@smithmoorelaw.com*
*jennifer.noland@smithmoorelaw.com*

## **CERTIFICATE OF SERVICE AND TYPE SIZE COMPLIANCE**

Pursuant to Local Rule 5.1C, ND Ga. and Standing Order No. 04-01, the

foregoing pleading is prepared in Times New Roman, 14 point, and was filed using

the CM/ECF system, which will automatically provide notice to the following

attorney of record by electronic means:

Pamela I. Atkins, Esq.

This 5th day of March, 2010.

s/ *Jennifer L. Noland*
Jennifer L. Noland